UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CYNTHIA L. BERNIER<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF PHILADELPHIA<br>POLICE DEPARTMENT<br><br>　　　　Defendant. | :<br>:　CIVIL ACTION NO.<br>:<br>:　JURY DEMAND<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

COMPLAINT

PARTIES

1. Plaintiff, Cynthia L. Bernier is an adult individual and citizen of the United States, and a resident of the state of Pennsylvania, having at all times relevant and material an address at 3215 Hellerman Street, Philadelphia, Pennsylvania 19149.

2. Defendant, City of Philadelphia Police Department (the "Department"), is a municipal and public entity and/or public body and/or agency or subagency/division of the City of Philadelphia, organized and existing pursuant to one or more laws, ordinances and statutes of the Commonwealth of Pennsylvania, with headquarters at 8th and Race Streets, Philadelphia, Pennsylvania.

JURISDICTION AND VENUE

3. Jurisdiction over the action is conferred upon this District Court pursuant to 28 U.S.C. §1331, in that the cause of action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., and related federal regulations, and invokes the gender anti-

1

discrimination provisions of that law.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(e), in that plaintiff and defendant reside in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district and no real property is involved.

## FACTUAL BACKGROUND

5. Plaintiff began her career as a police officer with the Department in 1982, working in the 39th District, and then as court liason from 1993 to 2003, when plaintiff put in for transfer to the Airport Unit. Officer Bernier is a Caucasian (white) female.

6. While at the Airport Unit, Officer Bernier put in multiple applications for the K-9 unit, which were denied. Male officers with less time in the Department at the Airport were selected over the plaintiff for the K-9 unit.

7. In 2006, plaintiff filed a charge of discrimination with the EEOC over her non-appointment to the K-9 unit, and the EEOC found cause and the Department settled the charge. At the time, there were no other women officers in the Airport K-9 unit.

8. Under the EEOC settlement, plaintiff received her transfer to the Airport K-9 unit. In January, 2007, in connection with this appointment, plaintiff received 10 weeks of basic K-9 training in Texas, upon which plaintiff was certified to continue training at the Airport.

9. After plaintiff returned to the Airport, she received additional K-9 training and was awarded certification at the Airport, qualifying her for full K-9 detail by July, 2007.

10. Plaintiff was the first woman officer to work in the K-9 unit at the Airport Unit. Plaintiff worked in 1 Squad. At the time, the entire K-9 unit at the Airport consisted of approximately 10 officers split between various squads, although the total officers in all squads at

the Airport exceeded 100.

11. After plaintiff's K-9 tenure began, her supervising officer had complained that because of plaintiff's appointment, other women would now be allowed to enter the K-9 unit. Even after plaintiff was appointed, the K-9 unit was akin to an all-male club.

12. Almost immediately, and continuing through plaintiff's second EEOC charge based on sexual discrimination and retaliation, the Department launched a campaign of disparate treatment and retaliatory harassment against the plaintiff in her work detail and conditions and environment in the K-9 unit, treating her differently from the male K-9 officers, as follows:

    a. upon receiving her K-9 certifications, another K-9 officer (male) told other 1 Squad officers that plaintiff would be "set up to fail" by her supervisor;

    b. after receiving her appointment, while in Texas, the K-9 training supervisor (male officer) called Texas and instructed that plaintiff was to be given a particularly difficult breed of dog not commonly used in the Airport K-9 detail, and ill-suited to the plaintiff;

    c. denying and/or excluding plaintiff from K-9 training, by purposefully not notifying her, and purposefully not communicating with her over training detail or scheduling;

    d. detailing her to training spontaneously, with no advance notice, after the male officers already completed training for their K-9 and had altered the condition of the field, diminishing the value and/or rendering the training worthless to the plaintiff;

    e. refusing to follow proper K-9 training protocol and procedures as to only the plaintiff, established to insure uniform fairness to all K-9 officers and their K-9 who were receiving training, diminishing the value and/or rendering the training worthless to the plaintiff;

    f. outright excluding plaintiff from K-9 training on at least a dozen separate

3

occasions, and intentionally ostracizing the plaintiff from K-9 agenda, detail and scheduled training, cumulatively reducing plaintiff's and her K-9's capabilities on police detail;

    g. as a result of the notorious denial and/or diminished value of the training, purposefully diminishing plaintiff's ability to pass her field evaluations with her K-9, leading to discipline and/or loss of her K-9;

    h. allowing other K-9 officers to pass their jobs and/or radio calls along to the plaintiff, contrary to radio protocol and procedure, encumbering and/or changing the conditions of plaintiff's employment, particularly with respect to bag and package inspections;

    i. harassing, denigrating and humiliating plaintiff in her employment in K-9 with the open and notorious displaying of pornographic pictures, movies, and other sexually explicit materials in the K-9 training room in the overseas terminal;

    j. harassing, denigrating and humiliating plaintiff in her employment in the K-9 unit by subjecting plaintiff to comments and jokes by her supervisors about explicit sexual acts and experiences, directed at and/or made in the presence of plaintiff;

    k. acting and/or conducting the Department as aforesaid with the intention to make plaintiff's job performance more difficult because of her gender;

    l. acting and/or conducting the Department as aforesaid with the intention to disadvantage plaintiff's development and career.

13. On October 25, 2007, plaintiff filed a charge of discrimination with the EEOC, asserting discrimination in her employment in the K-9 unit on the basis of sex and retaliation on the part of the Department.

14. The October 25, 2007 charge specifically alleged ongoing retaliation towards

plaintiff's employment based on the prior-filed charge in 2006, which had resulted in plaintiff's assignment and full certification in K-9 in the first instance.

15. Throughout her K-9 tenure, plaintiff has been consistently denied the hours of overtime afforded the male K-9 officers, despite requesting the overtime and her availability to work the overtime.

16. The only reason given by her supervising sergeant was plaintiff had used too much vacation - an invalid reason since other male officers used far more vacation time than plaintiff and overtime was not denied the male officers.

17. On January 6, 2009, plaintiff received a counseling memorandum for alleged cell phone use while searching cargo in the U.S. Airways hanger. The Department cited regulations under neglect of duty, and that a further infraction could lead to discipline.

18. All male K-9 officers have repeatedly used their cell phones before and after plaintiff was cited, and none were disciplined or received counseling notices or notices for neglect of duty during this period.

19. One year earlier, in February, 2008, plaintiff had received a counseling memorandum for allegedly throwing a kong (a K-9's reward) at and/or near an explosive, which was untrue since plaintiff had thrown the kong away from the explosive and it bounced back.

20. On August 30, 2009, plaintiff was removed from the police K-9 unit at the Airport. The reasons given by the Captain were the counseling memorandums in January, 2009 and February, 2008.

21. There were no further incidents involving plaintiff's performance, conduct or violation of any safety procedures cited by the Captain in her termination of plaintiff's K-9

assignment.

22. Plaintiff was re-assigned to general patrol duties in 1 Squad, and is permanently relegated out of the K-9 unit, which had been her permanent assignment for which she was specially certified.

23. Plaintiff's performance reviews throughout her police tenure have been satisfactory (the highest rating), and plaintiff was even commended in her March, 2009 review for completing a difficult K-9 annual evaluation.

24. Plaintiff received her right to sue letter on July 7, 2009. Under applicable law, plaintiff's right to file this civil action has accrued.

<u>COUNT I</u>

Title VII of the Civil Rights Act of 1964
[Gender Discrimination]
Disparate Treatment
v.
<u>Philadelphia Police Department</u>

25. Plaintiff incorporates herein by reference paragraphs 1 through 24, inclusive, as though the same were more fully set forth at length.

26. On the basis of gender as to male police officers in the Airport K-9 unit, Plaintiff in her employment was a member of a protected group as defined under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

27. Plaintiff at all times relevant, was qualified, trained and fully competent to perform her job duties, detail and assignments in Airport K-9 unit as aforesaid.

28. The plaintiff was removed from her assigned K-9 detail without regard to skill, ability, experience or certification, as a constructive and premeditated scheme to humiliate, and

demote and frustrate plaintiff in her employment and advancement at the Airport Unit.

29. The Department deliberately treated plaintiff disparately in her work assignments, re-assignments, training, work details and duties as aforesaid, compared to other male police officers in the Airport K-9 unit.

30. The Department fostered a disparate and unsafe work environment of real danger and harm to the plaintiff and other police officers, by refusing to provide plaintiff and her K-9 with training, as an unlawful campaign to instigate poor performance or insubordination, and force the plaintiff and her K-9 to fail mandatory evaluative testing and/or to quit her K-9 position.

31. The Department repeatedly denied the plaintiff overtime, or refused to follow the policy and protocol governing distribution of overtime at the K-9 unit, disparately favoring all of the male K-9 officers over plaintiff, where plaintiff requested and desired to work as much overtime as available.

32. The Department, motivated by gender-based considerations, purposely harassed and denigrated the plaintiff, treating her disparately compared to the male K-9 officers, with the intention that she would eventually suffer emotional breakdown, injury, or poor performance under duress, and quit the K-9 unit.

33. Plaintiff has sustained physical and mental injuries, has sought medical care and treatment for stress, anxiety and other ailments, and has been prescribed medications, all relating to the conditions and environment of her employment created by the Department.

34. Plaintiff has been required and will be obliged to receive medical attention and care and has incurred expenses for her diminished health conditions, and will incur medical expenses

in the future.

35. Plaintiff, as a result of the termination of her K-9 assignment, has suffered significant losses in her ability to plan a retirement in law enforcement and accouterments of employment that would be K-9 based, and all future opportunities are now foreclosed due to the re-assignment.

36. Plaintiff, for all the reasons articulated above, suffered repeated adverse employment actions at the hands of the Department.

37. The Department acted with illegal discriminatory motive towards the plaintiff.

38. As a result, plaintiff has suffered harm and damages.

39. The Department, acting as aforesaid, discriminated against plaintiff under the Civil Rights Act of 1964, and has violated that Act.

40. The Department, acting as aforesaid, engaged in such illegal discriminatory practices with malice or with reckless indifference to the federally protected rights of the plaintiff.

WHEREFORE, plaintiff, Cynthia L. Bernier demands judgment in her favor and against the City of Philadelphia Police Department, for monetary damages, compensatory damages (including all back pay, wages, overtime pay, prejudgment interest), liquidated damages, exemplary and/or punitive damages, injunctive relief and/or affirmative relief as determined by the court necessary to effect the purposes of the Civil Rights Act of 1964, and attorneys' fees and costs, all under the Civil Rights Act of 1964, as amended, and all applicable Federal Regulations promulgated thereunder, and for such other relief as the court deems just.

COUNT II

Title VII of the Civil Rights Act of 1964
Hostile Work Environment - §2000e-2(a)
v.
Philadelphia Police Department

41. Plaintiff incorporates herein by reference paragraphs 1 through 40, inclusive, as though the same were more fully set forth at length.

42. Plaintiff suffered intentional discrimination because of her gender.

43. The acts, conduct and/or omissions of the Department, as aforesaid, were both severe (by contaminating the environment of plaintiff's employment), and pervasive (the frequency of the harassment so contaminated the workplace for plaintiff that it essentially changed the conditions of her employment), and therefore actionable.

44. As a result of the acts, conduct and/or omissions of the Department, plaintiff has become physically and emotionally sick, has suffered false, derogatory reviews in her permanent files and a loss of her specialized K-9 unit assignment, lost overtime, lost opportunities for advancement, a disadvantaged career and other harm.

45. The foregoing acts, conduct and/or omissions would have adversely affected a reasonable officer of the same gender as the plaintiff, and by the conduct of the plaintiff's supervisory officers and training officers in 1 Squad and the K-9 unit, the Department is liable.

WHEREFORE, plaintiff, Cynthia L. Bernier demands judgment in her favor and against the City of Philadelphia Police Department, for monetary damages, compensatory damages (including all back pay, wages, overtime pay, prejudgment interest), liquidated damages, exemplary and/or punitive damages, injunctive relief and/or affirmative relief as determined by

the court necessary to effect the purposes of the Civil Rights Act of 1964, and attorneys' fees and costs, all under the Civil Rights Act of 1964, as amended, and all applicable Federal Regulations promulgated thereunder, and for such other relief as the court deems just.

COUNT III

Title VII of the Civil Rights Act of 1964
[Retaliation for filing EEOC claims]
v.
Philadelphia Police Department

46. Plaintiff incorporates herein by reference paragraphs 1 through 45, inclusive, as though the same were more fully set forth at length.

47. Plaintiff engaged in protected activity in the course of her employment with the Department, in filing her EEOC charge in 2006 against the Department, and pursuing the administrative process under the charge and settling the charge.

48. Plaintiff engaged in protected activity in the course of her employment in the Airport K-9 unit, in filing her second EEOC charge on October 25, 2007, and pursuing the administrative process under the charge and receiving the right to sue letter.

49. The Department took adverse action towards the plaintiff and her employment as a Philadelphia police officer in the Airport K-9 unit and in 1 Squad, as described aforesaid, as such unlawful conduct would have dissuaded a reasonable police officer at the Airport K-9 unit from making or supporting such charge of discrimination.

50. A causal relationship exists between the protected activity and the Department's adverse action towards plaintiff and her employment with the Department.

51. As a result of the Department's retaliation towards plaintiff, plaintiff has suffered

direct and indirect harm and damages, including a disadvantaged career, physical illness and emotional distress, pain and suffering, and other ailments, and have incurred medical expenses and will incur medical expenses in the future.

52. The Department, acting as aforesaid, discriminated against plaintiff under the Civil Rights Act of 1964, as amended, and has violated the Act.

53. The Department, acting as aforesaid, engaged in such illegal and discriminatory practices with malice or with reckless disregard and indifference to the federally protected rights of the plaintiff.

WHEREFORE, plaintiff, Cynthia L. Bernier demands judgment in her favor and against the City of Philadelphia Police Department, for monetary damages, compensatory damages (including all back pay, wages, overtime pay, prejudgment interest), liquidated damages, exemplary and/or punitive damages, injunctive relief and/or affirmative relief as determined by the court necessary to effect the purposes of the Civil Rights Act of 1964, and attorneys' fees and costs, all under the Civil Rights Act of 1964, as amended, and all applicable Federal Regulations promulgated thereunder, and for such other relief as the court deems just.

<u>COUNT IV</u>

Title VII of the Civil Rights Act of 1964
[Retaliatory Harassment - §2000e-3]
v.
<u>Philadelphia Police Department</u>

54. Plaintiff incorporates herein by reference paragraphs 1 through 53, inclusive, as though the same were more fully set forth at length.

55. The severe and pervasive conduct by the Department, directed towards the plaintiff

as described aforesaid, as a totality of circumstances, was demonstrative and suggestive of antagonism and retaliatory animus and unlawful motive based upon plaintiff's protected activity.

56. A causal relationship exists between the protected activity and the Department's harassment towards plaintiff and her employment with the Department.

57. As a result of the Department's retaliatory harassment towards plaintiff, plaintiff suffered direct and indirect harm and damages, including a disadvantaged career, physical illness and emotional distress, pain and suffering, and other ailments, and have incurred medical expenses and will incur medical expenses in the future.

58. The Department, acting as aforesaid, discriminated against plaintiff under the Civil Rights Act of 1964, as amended, and has violated the Act.

59. The Department, acting as aforesaid, engaged in such illegal and discriminatory practices with malice or with reckless disregard and indifference to the federally protected rights of the plaintiff.

WHEREFORE, plaintiff, Cynthia L. Bernier demands judgment in her favor and against the City of Philadelphia Police Department, for monetary damages, compensatory damages (including all back pay, wages, overtime pay, prejudgment interest), liquidated damages, exemplary and/or punitive damages, injunctive relief and/or affirmative relief as determined by the court necessary to effect the purposes of the Civil Rights Act of 1964, and attorneys' fees and costs, all under the Civil Rights Act of 1964, as amended, and all applicable Federal Regulations promulgated thereunder, and for such other relief as the court deems just.

          /s/ J. Stephen Woodside
J. Stephen Woodside
Attorney for plaintiff, Cynthia L Bernier

OF COUNSEL:

J. STEPHEN WOODSIDE, P.C.
One Montgomery Plaza
425 Swede Street, Suite 605
Norristown, PA 19401
(610) 278-2442

Dated:   October 5, 2009

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

        /s/ J. Stephen Woodside
J. Stephen Woodside
Attorney for plaintiff, Cynthia L. Bernier

Dated:   October 5, 2009